**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** 1101 K Street, N.W., Suite 201 Washington, D.C.  20005 | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Civil Action No. _____ |
| **OFFICE OF MANAGEMENT AND BUDGET,** 725 17th Street, N.W. Washington, D.C.  20503 | ) ) ) ) ) |
| **U.S. DEPARTMENT OF DEFENSE,** 1400 Defense Pentagon Washington, D.C.  20301-1400 | ) ) ) ) |
| **U.S. DEPARTMENT OF STATE,** 2201 C Street, N.W. Washington, D.C.  20520 | ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive,

declaratory, and other appropriate relief.  Plaintiff Citizens for Responsibility and Ethics in

Washington ("CREW") challenges the failure of the Office of Management and Budget

("OMB"), the U.S. Department of Defense ("DOD"), and the U.S. Department of State ("State

Department") to respond to its requests for documents related to U.S. security assistance and

military aid for Ukraine.

2.      This case seeks declaratory relief that OMB, DOD, and the State Department are in violation of the FOIA, 5 U.S.C. §§ 552(a)(3)(A), for failing to provide CREW all responsive records, and injunctive relief ordering all defendants to process and release to CREW immediately the requested records.

## Jurisdiction and Venue

3.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

4.      Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies.  CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions.  To advance its mission, CREW uses a combination of research, litigation, and advocacy.  As part of its research, CREW uses government records made available to it under the FOIA.

5.      Defendant OMB is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 701.  Defendant has possession and control of the requested records and is responsible for fulfilling Plaintiff's FOIA request.

6.      Defendant DOD is an agency within the meaning of 5 U.S.C. § 552(f) and 5

U.S.C. § 701.  Defendant has possession and control of the requested records and is responsible

for fulfilling Plaintiff's FOIA request.

7.      Defendant State Department is an agency within the meaning of 5 U.S.C. § 552(f)

and 5 U.S.C. § 701.  Defendant has possession and control of the requested records and is

responsible for fulfilling Plaintiff's FOIA request.

### Statutory and Regulatory Background

8.      The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release

requested records to the public unless one or more specific statutory exemptions apply.

9.      An agency must respond to a party making a FOIA request within 20 working

days, notifying that party of at least the agency's determination of which of the requested records

it will release, which it will withhold and why, and the requester's right to appeal the

determination to the agency head.  5 U.S.C. § 552(a)(6)(A)(i).

10.     In "unusual circumstances" an agency may extend the time to respond to a request

by no more than 10 working days provided that the agency gives the requester written notice

setting forth the unusual circumstances and the date on which the agency expects to make a

determination.  5 U.S.C. § 552(a)(6)(B)(i).  The FOIA defines "unusual circumstances" as

including the need to search for and collect responsive records from offices other than the office

processing the request; the need to search for, collect, and examine a "voluminous amount of

separate and distinct records"; and the need to consult with another agency.  5 U.S.C.

§ 552(a)(6)(B)(iii)(I)–(III).

**Factual Background**

11.     On August 12, 2019, a whistleblower who works within the intelligence

community filed a complaint with the Office of the Inspector General of the Intelligence

Community, reporting an "urgent concern" that "the President of the United States is using the

power of his office to solicit interference from a foreign country in the 2020 U.S. election."

Press Release, House Intelligence Committee Releases Whistleblower Complaint, House

Permanent Select Committee on Intelligence (Sept. 26, 2019),

https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=708.

12.      According to a declassified version of the complaint released by the House

Permanent Select Committee on Intelligence, the whistleblower described President Trump's

July 25, 2019 telephone call with Ukrainian President Volodymyr Zelenskyy, in which "after an

initial exchange of pleasantries, the President used the remainder of the call to advance his

personal interests.  Namely, he sought to pressure the Ukrainian leader to take actions to help the

President's 2020 reelection bid."  Letter from Anonymous to Richard Burr, Chairman, U.S.

Senate Select Committee on Intelligence, and Adam Schiff, Chairman, U.S. House of

Representatives Permanent Select Committee on Intelligence (Aug. 12, 2019),

https://intelligence.house.gov/uploadedfiles/20190812_-_whistleblower_complaint_unclass.pdf

("*Whistleblower Complaint*").  The actions requested by President Trump reportedly included

investigations into former Vice President Joe Biden and his son, Hunter Biden, as well as into

alleged Ukrainian interference in the 2016 U.S. presidential election.  *Id.*

13.     In a section on circumstances leading up to the July 25 phone call, the

whistleblower noted that he or she learned in mid-July "of a sudden change of policy with

respect to U.S. assistance," which was described in more detail in an appendix.  *Whistleblower*

*Complaint* at 7.  Specifically, the whistleblower wrote, "On 18 July, an Office of Management

and Budget (OMB) official informed Departments and Agencies that the President 'earlier that

month' had issued instructions to suspend all U.S. security assistance to Ukraine.  Neither OMB

nor the [National Security Council] staff knew why this instruction had been issued.  During

interagency meetings on 23 July and 26 July, OMB officials again stated explicitly that the

instruction to suspend this assistance had come directly from the President, but they still were

unaware of a policy rationale.  As of early August, I heard from U.S. officials that some

Ukrainian officials were aware that U.S. aid might be in jeopardy, but I do not know how or

when they learned of it."  *Id.* at Classified App'x.

14.     The whistleblower's observations—in particular, that President Trump asked

Ukrainian President Zelenskyy for a politically beneficial investigation into a political rival—are

now at the center of a formal impeachment inquiry being conducted by the House of

Representatives.  Nicholas Fandos, *Nancy Pelosi Announces Formal Impeachment Inquiry of

Trump*, N.Y. Times (Sept. 24, 2019), https://nyti.ms/2mUtZyz.  According to Speaker of the

House Nancy Pelosi, the "sequencing of events," including President Trump's decision to

withhold aid days before his phone call with President Zelenskyy, is a part of the investigation.

Scott Pelley, *The Impeachment Inquiry: "We Could Not Ignore What the President Did"*, CBS

News (Sept. 30, 2019), https://cbsn.ws/2BGP6IJ.

15.     Testimony during the impeachment inquiry has corroborated the whistleblower's

information about a White House directive to withhold assistance to Ukraine.  On October 22,

2019, William B. Taylor, Chargé d'Affaires of the U.S. embassy in Ukraine, testified that he

learned about a hold on funds for Ukraine a week before President Trump's July 25 phone call

with President Zelenskyy.  *Opening Statement of Ambassador William B. Taylor - October 22,*

*2019*, Wash. Post (Oct. 23, 2019), https://wapo.st/2PcfUZk ("*Taylor Opening Statement*").  An

OMB official relayed the decision to Taylor and other officials in an interagency meeting on July

18, 2019, explaining that she "could not say why" the hold was in place but the "directive had

come from the President to the Chief of Staff [and Director of OMB, Mick Mulvaney,] to

OMB."  *Id.*; *see also* Karoun Demirjian, Josh Dawsey, Ellen Nakashima and Carol D. Leonig,

*Trump Ordered Hold on Military Aid Days Before Calling Ukrainian President, Officials Say*,

Wash. Post (Sept. 23, 2019), https://wapo.st/31I3T0g.

16.     According to Taylor, a series of interagency meetings followed OMB's

announcement, in which "the unanimous conclusion was that the security assistance should be

resumed, the hold lifted.  At one point, the Defense Department was asked to perform an analysis

of the effectiveness of the assistance.  Within a day, the Defense Department came back with the

determination that the assistance was effective and should be resumed. . . . [T]he Secretaries of

Defense and State, the CIA Director, and the National Security Advisor sought a joint meeting

with the President to convince him to release the hold, but such a meeting was hard to schedule

and the hold lasted well into September."  *Taylor Opening Statement* at 6–7.

17.     Taylor said that he ultimately came to understand that the hold on security

assistance was explicitly tied to the Ukrainians' willingness to investigate the Bidens and alleged

Ukrainian interference in the 2016 U.S. election.  *Taylor Opening Statement* at 11–14.  Taylor

described a series of exchanges in which Ambassador to the European Union Gordon Sondland

explained that "everything"—including security assistance—was dependent on President

Zelenskyy's public announcement of such investigations, and that he, Ambasador Sondland, had advised President Zelenskyy to tell President Trump that Ukraine would "leave no stone unturned" with respect to "investigations." *Id.* at 8–13.  Ambassador Sondland engaged President Zelenskyy as part of an "irregular, informal channel of U.S. policy-making" that also included then-Special Envoy Kurt Volker, Secretary of Energy Rick Perry, and President Trump's personal lawyer Rudy Giuliani.  *Id.* at 4.

18.     Taylor later learned the details of President Trump's July 25 call with President Zelenskyy, after the White House released a rough transcript of the call on September 25, 2019. *Id.* at 14.  The transcript revealed that President Trump framed the conversation by saying, "we do a lot for Ukraine" and "I wouldn't say that it's reciprocal necessarily."  Memorandum of Telephone Conversation (July 25, 2019), https://bit.ly/345adAu.  Then, when President Zelenskyy stated that Ukraine was ready for "next steps" and specifically raised his desire to buy weapons from the United States, President Trump immediately replied by saying, "I would like you to do us a favor though" before asking for Ukraine to pursue investigations related to the Bidens and to Ukraine's alleged interference in the 2016 U.S. election.  *Id.*

*CREW's FOIA Request to OMB*

19.     On October 2, 2019, CREW sent a FOIA request by email to OMB requesting five types of records related to U.S. security assistance or military aid for Ukraine: (1)  records of all communications to or from OMB Director Mulvaney between June 1, 2019 and September 11, 2019 related to withholding security assistance or military aid for Ukraine; (2) for the same time period, records of all communications to or from Acting Director Russell Vought related to withholding security assistance or military aid for Ukraine; (3) all communications between

OMB and the State Department on July 18, 2019, July 23, 2019, and July 26, 2019 related to

security assistance or military aid for Ukraine; (4) all communications between OMB and DOD

on July 18, 2019, July 23, 2019, and July 26, 2019 related to security assistance or military aid

for Ukraine; and (5) all records related to interagency meetings on July 18, 2019, July 23, 2019,

and July 26, 2019[1] in which security assistance or military aid for Ukraine was discussed.

20.     CREW sought a waiver of fees associated with processing its request.  In support,

CREW explained that the requested records are likely to shed light on the reasoning behind the

multi-month freeze on military aid to Ukraine and how that policy decision was communicated

to both DOD and the State Department.  CREW explained further that, given the varying

explanations the Trump administration has given for the decision to withhold the funds over the

summer, the records would also help clarify the rationale for the decision as well as its

relationship to President Trump's July 25 phone call with the president of Ukraine.  CREW

added that, in these ways, the records would reveal important information about the functioning

and decisions of OMB.

21.     By email dated October 3, 2019, OMB acknowledged receipt of CREW's FOIA

request on October 2, 2019.

22.     To date, CREW has received no further response from OMB.

23.     Because OMB has not responded to or provided a determination on CREW's

October 2, 2019 FOIA request, CREW has exhausted all applicable administrative remedies with

respect to the request.

---

[1] The FOIA request inadvertently listed this date as "July 26, 2013."

*CREW's FOIA Request to DOD*

24.     On October 2, 2019, CREW sent a FOIA request by email to DOD's Office of

Freedom of Information requesting: (1) all communications between DOD and OMB on July 18,

2019, July 23, 2019, and July 26, 2019 related to security assistance or military aid for Ukraine;

and (2) all records related to interagency meetings that involved OMB on July 18, 2019, July 23,

2019, and July 26, 2019[2] in which security assistance or military aid for Ukraine was discussed.

25.     CREW sought a waiver of fees associated with processing its request.  In support,

CREW explained that the requested records are likely to shed light on the reasoning behind the

multi-month freeze on military aid to Ukraine and how that policy decision was communicated

to DOD.  CREW explained further that, given the varying explanations the Trump administration

has given for the decision to withhold the funds over the summer, the records would also help

clarify the rationale for the decision as well as its relationship to President Trump's July 25

phone call with the president of Ukraine.  CREW added that, in these ways, the records would

reveal important information about the functioning and decisions of DOD.

26.     By letter dated October 4, 2019, DOD acknowledged receipt of CREW's FOIA

request on October 2, 2019.  DOD claimed that the "unusual circumstances" provision of the

FOIA "applies or would likely apply" to CREW's request.  DOD did not provide a date by which

the agency anticipated a response.  DOD also stated without explanation that it had placed

CREW's request in the complex track.

27.     To date, CREW has received no further response from DOD.

---

[2] The FOIA request inadvertently listed this date as "July 26, 2013."  CREW clarified the proper year (2019)  in an email exchange with DOD on October 9, 2019.

28.     Because DOD has not responded to or provided a determination on CREW's

October 2, 2019 FOIA request, CREW has exhausted all applicable administrative remedies with

respect to the request.

*CREW's FOIA Request to the State Department*

29.     On October 2, 2019, CREW sent a FOIA request by email to the State

Department requesting: (1) all communications between the State Department and OMB on July

18, 2019, July 23, 2019, and July 26, 2019 related to security assistance or military aid for

Ukraine; and (2) all records related to interagency meetings that involved OMB on July 18,

2019, July 23, 2019, and July 26, 2019[3] in which security assistance or military aid for Ukraine

was discussed.

30.     CREW sought a waiver of fees associated with processing its request.  In support,

CREW explained that the requested records are likely to shed light on the reasoning behind the

multi-month freeze on military aid to Ukraine and how that policy decision was communicated

to the State Department.  CREW explained further that, given the varying explanations the

Trump administration has given for the decision to withhold the funds over the summer, the

records would also help clarify the rationale for the decision as well as its relationship to

President Trump's July 25 phone call with the president of Ukraine.  CREW added that, in these

ways, the records would reveal important information about the functioning and decisions of the

State Department.

31.     By letter dated October 16, 2019, the State Department acknowledged receipt of

CREW's FOIA request on October 2, 2019.  The State Department claimed that the records

---

[3] The FOIA request inadvertently listed this date as "July 26, 2013."  The State Department's acknowledgment of the request properly listed this date as "July, 26, 2019."

CREW seeks require a search in offices separate from the office processing the request as well as consultation with other offices and/or agencies, and therefore fall within the "unusual circumstances" provision of the FOIA.  The State Department therefore claimed to need more than 10 additional days, but did not provide a date by which the agency anticipated a response. The State Department also stated without explanation that it had placed CREW's request in the complex track.

32.     To date, CREW has received no further response from the State Department.

33.     Because the State Department has not responded to or provided a determination on CREW's October 2, 2019 FOIA request, CREW has exhausted all applicable administrative remedies with respect to the request.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (OMB's Wrongful Withholding of Agency Records)

34.     Plaintiff repeats and re-alleges paragraphs 1-33 set forth above.

35.     Plaintiff properly requested records within the custody and control of OMB.

36.     Defendant OMB wrongfully withheld from disclosure all non-exempt records responsive to Plaintiff's FOIA request.

37.     By failing to release the records Plaintiff requested, Defendant OMB has violated the FOIA.

38.     Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of non-exempt records.

## CLAIM TWO
### (DOD's Wrongful Withholding of Agency Records)

39.     Plaintiff repeats and re-alleges paragraphs 1-33 set forth above.

40.     Plaintiff properly requested records within the custody and control of DOD.

41.     Defendant DOD wrongfully withheld from disclosure all non-exempt records responsive to Plaintiff's FOIA request.

42.     By failing to release the records Plaintiff requested, Defendant DOD has violated the FOIA.

43.     Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of non-exempt records.

## CLAIM THREE
### (State Department's Wrongful Withholding of Agency Records)

44.     Plaintiff repeats and re-alleges paragraphs 1-33 set forth above.

45.     Plaintiff properly requested records within the custody and control of the State Department.

46.     Defendant State Department wrongfully withheld from disclosure all non-exempt records responsive to Plaintiff's FOIA request.

47.     By failing to release the records Plaintiff requested, Defendant State Department has violated the FOIA.

48.     Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of non-exempt records.

### **Requested Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)      Order Defendants OMB, DOD, and State Department to immediately and fully

process Plaintiff's October 2, 2019 FOIA requests and disclose all non-exempt documents

immediately to Plaintiff;

(2)      Issue a declaration that Plaintiff is entitled to immediate processing and disclosure

of the requested records;

(3)      Provide for expeditious proceedings in this action;

(4)      Retain jurisdiction of this action to ensure no agency records are wrongfully

withheld;

(5)      Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(6)      Grant such other relief as the Court may deem just and proper.

> Respectfully submitted,
>
> */s/ Jessica Lutkenhaus*
> Jessica A. Lutkenhaus
> (D.C. Bar No. 1046749)
> Anne L. Weismann
> (D.C. Bar No. 298190)
> Citizens for Responsibility and Ethics
>      in Washington
> 1101 K Street, N.W., Suite 201
> Washington, D.C.  20005
> Phone: (202) 408-5565
> Facsimile: (202) 588-5020
> jlutkenhaus@citizensforethics.org
> aweismann@citizensforethics.org

Dated: November 20, 2019                    *Attorneys for Plaintiff*